IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

| | | |
|---|---|---|
| ROBERT SMITH | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | 4:24-cv-00723-O |
| | § | JURY DEMANDED |
| CENTRAL MUTUAL INSURANCE | § | |
| COMPANY AND SUSIE SALIM | § | |
| | § | |
|     Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO STRIKE GARY TREIDER**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, ROBERT SMITH,** Plaintiff, and files this, its response to Defendants Motion to Strike Expert, Gary Treider and would respectfully show as follows:

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 3
ARGUMENTS & AUTHORITIES............................................................................ 6
A. Treider' Opinions Do Not Lack Methodology. .................................................. 8
B. Gary Treider's Testimony is not Unsupported *Ipse Dixit*. ............................... 10
C. Pre-existing Hailstorms and Other Causes do not Render Treider's Opinions Unreliable. ............................................................................................................ 13
PRAYER................................................................................................................... 14

**TABLE OF AUTHORITES**

**Cases**

*Christian Heritage Sch. C/O Youth with A Mission v. Cent. Mut. Ins. Co.*, No. 6:24-CV-00045-JDK-JDL, 2025 U.S. Dist. LEXIS 22147, at *14 (E.D. Tex. 2025) ...................... 6

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 2798 (1993).. 6

*DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, 525 F. Supp. 3d 793, 798 (S.D. Tex. 2021) ........................................................................................................... 3

*Gun Barrell Jacksonville LLC v. Depositors Ins. Co.*, No. 6:20-CV-469- JDK, 2021 WL 5154218, at *3–4 (E.D. Tex. Oct. 9, 2021)...................................................................... 9

*Hartford Ins. Co. Midwest v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) ..................................................................................................................................... 3

*Hub Tex., LLC v. Arch Specialty Ins. Co.*, No. 5:21-CV-180-H-BQ, 2023 U.S. Dist. LEXIS 61392, at *8 (N.D. Tex. 2023) ................................................................................... 13

*J.A. Lanier & Associates, Inc. v. Robbins Electra Mgmt., LLC*, No. 4:21-CV-390, 2022 WL 1226966, at *4 (E.D. Tex. Apr. 26, 2022)........................................................................ 10

*Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). ................................................. 6

*Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003).................... 7

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ......................................... 7

*R&J Entm't LLC v. Hous. Cas. Co.*, No. 4:20-cv-03782, 2021 U.S. Dist. LEXIS 217487, at *8-9 (S.D. Tex. 2021)..................................................................................................... 3

**Rules**

FED. R. EVID. 702 .................................................................................................................. 6

## INTRODUCTION

1. This case is about the unfair, deceptive, and bad-faith denial of over $629,607.07 in covered homeowners' insurance benefits and a breach of the insurer's duty of good faith and fair dealing and numerous violations of the Texas Insurance Code.

2. Plaintiff is the named insured in Central Mutual Policy No. 3704125 hereinafter referred to as "the Policy." The policy is a replacement cost policy. The insuring agreement covers direct physical loss to Plaintiff's property.

> **SECTION I – PERILS INSURED AGAINST**
>
> We insure against direct physical loss to property described in Coverages **A, B** and **C**.

[Plaintiff App. 000028]. Direct physical loss is undefined, but the common and ordinary meaning of "direct physical loss of or damage to property" is not open to debate. *R&J Entm't LLC v. Hous. Cas. Co.*, No. 4:20-cv-03782, 2021 U.S. Dist. LEXIS 217487, at *8-9 (S.D. Tex. 2021). "While the policy does not define 'direct physical loss of or damage to property,' the Fifth Circuit has held that pleading 'direct physical loss or damage' to property requires allegations of 'distinct, demonstrable physical alteration of the property.'" *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, 525 F. Supp. 3d 793, 798 (S.D. Tex. 2021) (quoting *Hartford Ins. Co. Midwest v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (collecting authorities)).

On or about, April 28, 2021, Plaintiff's home was damaged by hail and wind and suffered direct physical loss to numerous roofing tiles. [Def. App. 000043-47].

**Storm Events**

| Date | At Location | Estimated Maximum Hail Size Within 1 mi / 1.61 km | Within 3 mi / 4.83 km | Within 5 Miles |
|---|---|---|---|---|
| Jun 11, 2023 | 0.9 in / 2.29 cm | 1.6 in / 4.06 cm | 2.1 in / 5.33 cm | 2.8 in / 7.11 cm |
| May 19, 2023 | -- | 0.9 in / 2.29 cm | 1 in / 2.54 cm | 1 in / 2.54 cm |
| Mar 21, 2022 | -- | 0.8 in / 2.03 cm | 0.9 in / 2.29 cm | 0.9 in / 2.29 cm |
| Nov 10, 2021 | -- | 0.75 in / 1.91 cm | 0.8 in / 2.03 cm | 0.8 in / 2.03 cm |
| Apr 28, 2021 | 2.1 in / 5.33 cm | 2.4 in / 6.1 cm | 2.6 in / 6.6 cm | 2.9 in / 7.37 cm |
| Mar 24, 2021 | -- | 0.8 in / 2.03 cm | 1 in / 2.54 cm | 2.1 in / 5.33 cm |
| Jun 16, 2019 | -- | -- | 0.75 in / 1.91 cm | 0.75 in / 1.91 cm |
| Mar 24, 2019 | -- | 0.8 in / 2.03 cm | 1 in / 2.54 cm | 1 in / 2.54 cm |

[Def. App. 000018].

3. Plaintiff's property suffered extensive damage. Thereafter, Plaintiff reported a $629,607.07 claim to Defendant. Defendant dispatched adjuster Alex Salinas to investigate Plaintiff's claim. However, Central partially denied then closed the claim absent conducting a reasonable investigation into all the covered damages to the property which constitutes an unfair or deceptive claim settlement practice with respect to an insurance claim.

Defendant admits the claim was worth $55,635.83. [Plaintiff App. 139]. However, Plaintiff seeks $629,607.07 as the cost to replace the covered items. [Def. App. 000102]. Plaintiff invoked appraisal on August 27, 2024, to resolve the amount of loss dispute and Defendant identified its appraiser on September 16, 2024. The appraisal award has not been issued.

Thereafter, Plaintiff designated Gary Treider of Chaparral Consulting and Forensics as retained expert to testify on his inspection, investigation, and observations of the Direct physical loss that occurred to that property that was caused by a hail and wind event on April 28, 2021. [Def. App. 000103].

> **CONCLUSIONS:**
>
> 1. The Mexican clay roof tiles on the subject roof were damaged by hail on the April 28, 2021 reported date of loss. There is a stark difference in the surface of tile from the subject roof when compared to newly purchased tile.
> 2. Hail spatters and scuffs measuring 2.5" were observed at the subject residence and at other nearby residences we inspected in the community.
> 3. We previously observed slate and other tile roofs in the gated community with comparable damage to what was observed on the subject roof.
> 4. The roof should be replaced due to hail damage that occurred on April 28, 2021.
>
> Please let us know if you have any questions or further instructions.
>
> Respectfully submitted,
>
> Gary B. Treider
> Project Director

[Def. App. 000005]. There is only one storm producing 2 inch hail at the property. [Def. App. 000018]. Treider's report, further indicated the following:

> **DISCUSSION:**
>
> Clear ice hailstones are harder than hailstones made of cloudy ice. Based upon practical field experience over several decades, hail fractures to the Mexican clay tile can occur with hailstones that measure 1.50" or larger in diameter. This observation is also based upon our tests conducted with hail canons, firing simulated "clear ice" hailstones into roofing products at terminal velocity.
>
> Tile from the subject roof was tested by firing a 1.75" clear ice simulated hailstones at 80 MPH velocity (photos 6.1 through 6.3). The tile was broken at the point of impact (red arrow in photo 6.2). As shown in the chart above, terminal velocity for that sized hailstone is 66 MPH. We used 80 MPH in the test firing for two reasons. The velocity of hail impacting the residence was at least 80 MPH (based upon the terminal velocity for 2.5" hail that was confirmed to impact the residence). Hail dents to window screen frames are common; however, wind driven hail is required for hailstones to make the dents on the _sides_ of window frames (photo 4.5). It is unusual for horizontal aluminum window frame components to be significantly dented (photos 4.1 through 4.4). It is much more unusual for the vertical (side) frames to be dented (photo 4.5). Based upon the physical evidence observed at the subject residence, the hail was obviously wind driven and in excess of terminal velocity.

4.   [Def. App. 000001, 4].

After reviewing weather data dating back to 2013, Treider opined that "the damage from hail to this property could not have been caused by any storm event" other than the April 28, 2021, storm. The weather data on which Treider

relied shows that on April 28, 2021, a storm produced 2.1 inch hail at the property. No other recent storm produced hail of a comparable size. Additionally, Treider performed testing that established that hailstones as small as 1.75 inches damages the subject roof tiles in his laboratory. [Def. App. 000004].

5. Defendants seek to exclude Treider's testimony on the following topics: (a) the cause and timing of any damage to Plaintiff's property; (b) whether Plaintiff's roof requires replacement; and, (c) the amount of purported hail damage that occurred to Plaintiff's property on April 28, 2021, as opposed to any other point in time or which resulted from other causes.

6. The rejection of expert testimony is the exception, not the rule. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking Treider opinions. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 2798 (1993).

7. Defendants' groundless Motion to Strike has been recently rejected by other Courts. *Christian Heritage Sch. C/O Youth with A Mission v. Cent. Mut. Ins. Co.*, No. 6:24-CV-00045-JDK-JDL, 2025 U.S. Dist. LEXIS 22147, at *14 (E.D. Tex. 2025)(denying motion to strike filed by Central Mutual Insurance.)

## **ARGUMENTS & AUTHORITIES**

8. Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93

(1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

9. When evaluating expert testimony, the overarching concern is generally focused on whether it is relevant and reliable. *See Daubert*, 509 U.S. at 590. To be reliable and therefore admissible under Rule 702, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles and methods; (4) and have reliably applied the principles and methods to the facts. Fed. R. Evid. 702. "[T]he test of reliability is 'flexible,' and the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 151.

10. Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Adv. Comm. Notes (2000). Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; rather, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed.

Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

**A. Treider' Opinions Do Not Lack Methodology.**

11.   Like *Christian Heritage Sch.*, Defendants' contention that Mr. Treider provided no methodology to explain the cause of damage related to the April 28, 2021, storm is inconsistent with the record.  Mr. Treider's report states the following:

> **WEATHER RESEARCH:**
>
> The 4/28/2021 hailstorm in Northern Tarrant County was well published by DFW news media. These reports provided photos depicting windshields of cars with hail penetrations measuring at least 2.5" (photo 2.3).
>
> CoreLogic produces one of the most recognized hail reporting services, so we included one of their reports herein, indicating hail measuring 2.4" within one mile and 2.6" within 3 miles.  CoreLogic rarely overstates hail size and typically will report smaller hail size than what actually occurred.  Upon request we can produce examples of supporting data and photos to support this conclusion.
>
> **OBSERVATIONS:**
>
> We evaluated several roofs in the gated community where the subject property is located that were damaged by the April 28, 2021 hailstorm.  The direction of hail impact was generally from the northwest but some of the larger stones fell very nearly vertically.
>
> The length of time that passed since the hailstorm on April 28, 2021 is sufficient for fading of hail spatters.  However, some hail spatters and hail scuffs were still identifiable during our evaluations at several locations in the community.  At all of the roofs evaluated in the community we were able to
>
> 2 | P a g e
>
> determine that the hail was consistently irregular in shape.  This is an important observation since the full kinetic energy of jagged hailstones can be concentrated in a smaller surface contact area.

**CONCLUSIONS:**

1. The Mexican clay roof tiles on the subject roof were damaged by hail on the April 28, 2021 reported date of loss. There is a stark difference in the surface of tile from the subject roof when compared to newly purchased tile.
2. Hail spatters and scuffs measuring 2.5" were observed at the subject residence and at other nearby residences we inspected in the community.
3. We previously observed slate and other tile roofs in the gated community with comparable damage to what was observed on the subject roof.
4. The roof should be replaced due to hail damage that occurred on April 28, 2021.

Please let us know if you have any questions or further instructions.

Respectfully submitted,

Gary B. Treider
Project Director

[Def. App. 000001-5].

12. Treider provided numerous photos of hail damaged tiles and concluded that there were too many damaged and the roof must be replaced. [Def App. 000043-47]. Treider also testified that he has experience in everything it takes to verify damage, if damage occurred, the extent of damage, what repair would be or if total replacement is required. [Plaintiff App. 000168-171]. This is the basis of his opinion recommending replacement.

13. In, *Gun Barrell Jacksonville LLC v. Depositors Ins. Co.*, No. 6:20-CV-469- JDK, 2021 WL 5154218, at *3–4 (E.D. Tex. Oct. 9, 2021), the court found an expert's methodology reliable because it was based on physical inspections, review of relevant reports, and the application of the expert's knowledge and training to the facts of the case. Here, Treider's methodology is no different. He inspected the property, reviewed relevant documents including weather reports and hail damage

to other properties in the area, and applied his extensive experience in evaluating buildings for hail damage. [Plaintiff App. 000168-171].

14. Defendant fails to show that Treider's methods have been rejected by courts or fail to meet the requirements of Rule 26(a). To the contrary, courts in this District have consistently recognized the reliability of methodologies grounded in experience, physical inspections, and the application of technical standards. See, e.g., *J.A. Lanier & Associates, Inc. v. Robbins Electra Mgmt., LLC*, No. 4:21-CV-390, 2022 WL 1226966, at *4 (E.D. Tex. Apr. 26, 2022) (noting that an expert's reliance on industry standards and personal experience provides a reliable foundation for opinions).

## B. Gary Treider's Testimony is not Unsupported *Ipse Dixit*.

15. It's important to underscore the absurdity of Defendants' arguments:

    a. Defendants' have never denied that the April 28, 2021, caused damage to Plaintiff's property. Defendants wrote a $55,635.83 estimate which included 11 hail damaged tiles. [Plaintiff App. 139]. The dispute is over how many tiles have direct physical loss from the storm.

    b. Defendants' own expert, David Brosig, admits there are more than 11 tiles with direct physical loss from the storm but he intentionally excluded them from his report:

39

```
1    Q. And that red area looks like at least --
2  at least a minimum 2-inch sized hail on April 28;
3  right?
4    A. Yeah, I believe the text up above says
5  what size was -- yes. Yes, that would be correct.
6    Q. All right. So about 2-inch size hail on
7  April 28 at the property; correct?
8    A. Correct.
9    Q. Okay. And in your professional opinion,
10 is 2-inch size hail large enough to cause damage?
11   A. Yes.
```

[Plaintiff App. 268].

```
17   Q. So my question to you is, first, from
18 looking at this photograph, are you able to
19 determine whether or not this is damaged caused by
20 hail, like Mr. Treider is saying, or damaged caused
21 by something else?
22   A. It's plausible it's caused by hail, but if
23 you back up and think that the whole purpose of a
24 roof covering is to shed water off the roof and keep
25 it out of the interior, these chips are
```

[Plaintiff App. 274].

```
12   Q. And what is the methodology or, you know,
13 the basis you're using to arrive at, you know, this
14 conclusion that I guess the damage that's in the
15 middle of this tile on photograph 46 was not caused
16 by hail?
17   A. Which portion? That left portion that
18 you're pointing to?
19   Q. Right where my cursor is, yeah. Yeah, to
20 me it looks like it's in the middle of the tile.
21   A. Oh, correct. Again, it's plausible that
22 that was created by hail, but again, it's not --
23 it's not recent. It is round in shape but the other
24 two are not round in shape, and I would think that a
25 hail stone big enough to chip that off would also
```

```
                                                          75
 1  create some radiating cracks from that area.
 2      Q. So it's plausible that this is hail
 3  damage; correct?
 4      A. It's plausible.
 5      Q. Okay. And this tile was not included in
 6  the 11 tiles?
 7      A. I don't know, probably not.
 8      Q. Okay. All right. And the methodology
 9  that you're using to exclude this from being caused
10  by hail is what again, just a visual inspection or?
11      A. It's a visual inspection, yes.
12      Q. So it's plausible for someone else to
13  disagree with you; correct?
14      A. Yes.
15      Q. Any other photographs of fractures not
16  caused by hail, spalling, and inclusion pop-outs
17  that you can identify in your report?
18      A. 49.
19      Q. Okay. Any others?
20      A. 51.
21      Q. Okay. Actually before we get to 51, is 50
22  damage caused by hail?
23      A. It's plausible it could be.
24      Q. And that wasn't included in your report as
25  one of the 11 damages tiles?
                                                          76
 1      A. No. No.
```

[Plaintiff App. 277].

```
20      Q. So it's fair to say -- and in all your
21  reports you've excluded the damage I just showed you
22  because, you know, you don't believe it's functional
23  and the insurance company shouldn't pay for it
24  correct?
25      A. Correct.
```

[Plaintiff App. 280].

  c. David Brosig employs the same *methodology* as Treider, but reaches a different conclusion because Brosig believes, erroneously, that "hail damage" must also cause the tile to lose its water shedding capabilities, when the policy requires only direct physical loss.

16. Defendant may have pointed out issues in Mr. Treider's opinions, but it does not render them *ipse dixit* merely because Defendant disagrees with his conclusion. In fact, Defendant's expert is intentionally ignoring damage that is covered by the policy. This is simply a matter of credibility of the expert, which the jury can properly consider. *See Hub Tex., LLC v. Arch Specialty Ins. Co.*, No. 5:21-CV-180-H-BQ, 2023 U.S. Dist. LEXIS 61392, at *8 (N.D. Tex. 2023) (finding that any weaknesses in the expert's opinions that the storms in question caused the damages at the property "go to weight and can be adequately highlighted through cross-examination and presentation of contrary evidence").

17. Defendants' objection that Treider failed to consider the property's pre-existing condition is groundless and must be denied.

**C. Pre-existing Hailstorms and Other Causes do not Render Treider's Opinions Unreliable.**

18. Treider' testified that he reviewed weather data. The only storm with 2 inch hail occurred on April 28, 2021. Defendants' attempt to rely on numerous insignificant storms surrounding the property is misleading.

19. Treider concluded that the roof should be replaced due to the April 28, 2021, storms because that is the only storm that could have caused the type of damage he saw during his inspection.

20. Accordingly, Defendant's Motion to Strike must be denied.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that this Honorable Court deny Defendants Motion to Strike Plaintiff's Expert, Gary Treider and for all further relief, either at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**CLIFFORD K. NKEYASEN** PLLC
Attorneys + Counselors
4310 N. Central Expy, Suite 103
Dallas, TX 75206
Tel: (469) 249-9271
Fax: (469) 249-9113
service@coveragedenied.com

By: ___/s/ *Clifford Nkeyasen*___
Clifford K. Nkeyasen
Texas Bar No: 24044876

**BOARD CERTIFIED®**
Texas Board of Legal Specialization
INSURANCE LAW

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that, on the 14th day of February 2025, a true and correct copy of the above and foregoing has been served by:

☐ certified mail, ☐ return receipt requested; ☐ overnight delivery; ☐ hand delivery; ☐ United States first class mail; ☐ facsimile transmission, ☒ electronic transmission on the following counsel:

| | |
|---|---|
| Clinton J. Wolbert<br>PHELPS DUNBAR LLP<br>910 Louisiana Street, Suite 4300<br>Houston, Texas 77002<br>Telephone: 713-626-1386<br>Facsimile: 713-626-1388 | William R. de los Santos<br>PHELPS DUNBAR LLP<br>2102 E. State Hwy 114, Suite 207<br>Southlake, Texas 76092<br>Telephone: (817) 488-3134<br>Facsimile: (817) 488-3214<br>william.delossantos@phelps.com |

**ATTORNEYS FOR DEFENDANTS**

                                                            */s/ Clifford Nkeyasen*
                                                                Clifford K. Nkeyasen